ADAM GORDON
United States Attorney
Eric Chiang
Assistant U.S. Attorney
California Bar No. 323268
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9622
Email: Eric.Chiang@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAVIER CABRERA-RODRIGUEZ,<br><br>Defendant. | Case No. 25-CR-4060-RSH<br><br>THE UNITED STATES':<br><br>(1) RESPONSE TO DEFENDANT'S MOTIONS TO COMPEL DISCOVERY; PRESERVE EVIDENCE; AND LEAVE TO FILE FURTHER MOTIONS.<br>(2) MOTION FOR RECIPROCAL DISCOVERY<br><br>TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

The UNITED STATES OF AMERICA, by and through its counsel, Adam Gordon, United States Attorney, and Eric Chiang, Assistant United States Attorney, hereby files its Response to Defendant's Motions and Motion for Reciprocal Discovery. This Response is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

//

//

# I.

## STATEMENT OF THE CASE

On October 7, 2025, Javier Cabrera-Rodriguez ("Defendant") was arrested for attempted entry after deportation, contrary to Title 8, United States Code, Section 1326, and charged via complaint. (ECF No. 1.) At approximately 1:10 p.m. that day, Border Patrol agents responded to a service radio call that Defendant was walking north along the beach in an area approximately 5 miles west of the San Ysidro, California Port of Entry and 20 yards north of the United States/Mexico International Boundary. (*Id*.) A Border Patrol agent approached and questioned Defendant, who stated that he had jumped the fence and was on his way home to San Diego, California. (*Id*.)

Records checks revealed that Defendant had previously been deported to Mexico on October 29, 2021 through San Ysidro, California, and had not applied for permission from the Attorney General of the United States or her designated successor, the Secretary of the Department of Homeland Security, to return to the United States after being removed. (*Id*.) On October 21, 2025, Defendant was arraigned on an Indictment. (ECF Nos. 17, 18.) A motion hearing and trial setting is scheduled before this Court on December 12, 2025 at 1:30 p.m. (ECF No. 22.)

# II.

## STATUS REPORT

The discovery provided to Defendant includes documents and objects which are discoverable under Rule 16(a)(l)(E). The discovery provided thus far consists of approximately 674 pages of written discovery, which includes law enforcement reports, RAP sheets, photos of personal property, prior criminal conviction documents, and prior removal documents. The United States has also produced electronic media consisting of the post-arrest interview of the Defendant, dispatch audio, and body worn camera footage. The parties conducted a viewing of the A-file on November 18, 2025. Upon request and reasonable notice, the United States will provide the defense an opportunity to view any physical evidence seized.

## III.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. RESPONSE TO DEFENDANT'S MOTIONS TO COMPEL DISCOVERY AND PRESERVE EVIDENCE

The United States will continue to comply with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), the Jencks Act, 18 U.S.C. § 3500 *et. seq.*, and Fed. R. Crim. P. 16. The United States objects to Defendant's general request for information in the custody, control, care, or knowledge of "any closely related investigative [or other] agencies" as vague and overbroad.

A. The Defendant's Statements

The United States has complied, and is continuing to comply, with Fed. R. Crim. P. 16(a)(1)(A) and 16(a)(1)(B) by providing all of Defendant's statements that are known to the United States. The United States has provided law enforcement reports, Defendant's post-arrest video, and body worn camera footage of the encounter. The United States recognizes its obligations under Rule 16(a)(1)(A) to disclose the "substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." Fed. R. Crim. P.16(a)(1)(A). If additional statements by Defendant come to light, the United States will supplement its discovery and provide those reports to defendant.

To the extent Defendant seeks agent rough notes, the United States does not object to preserving the agent's handwritten notes. *See United States v. Harris*, 543 F.2d 1247, 1253 (9th Cir. 1976) (a government agent must preserve his original notes of an interview with an accused or prospective government witness). But the United States objects to producing the agent's handwritten notes right now. The United States does not need to produce agent notes under the Jencks Act unless the notes comprise a substantially verbatim narrative of a witness's assertion and have been approved or adopted by the witness. *See United States v. Spencer*, 618 F.2d 605, 606-07 (9th Cir. 1980). The agent's

notes are not *Brady* material because they do not constitute exculpatory information or other evidence favorable to Defendant that is material to guilt or punishment. If the agent's notes become particularly relevant in the future, those notes will be produced to Defendant consistent with the United States' discovery obligations.

B. Arrest Reports, Notes, Dispatch Tapes, and Audio/Video Recordings

The United States has produced arrest reports, notes, and audio/video recordings and will continue to fulfill its discovery obligations should additional reports or recordings be generated or become relevant to this case. The United States incorporates its response in sections A-1, *supra*, to Defendant's request for rough notes, investigators' notes, and prosecution reports.

C. Brady Material

The United States recognizes its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) to provide evidence that is either exculpatory or could be used to impeach witnesses called by the United States, including material information about bias. This obligation extends to evidence that is not requested by the defense. *United States v. Bagley*, 473 U.S. 667, 682 (1985). "Evidence is material, and must be disclosed [under *Brady*], 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Carriger v. Stewart*, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995).

The United States has and will continue to disclose exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment. The United States incorporates this response to each item addressed in this opposition.

But the United States will not open all of its files for discovery. *Brady* does not require the United States to produce information in the custody, control, or possession of all government agencies. *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989); *United States v. Henke*, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam). The United

States is also not required to disclose: (1) neutral, irrelevant, speculative, or inculpatory evidence (*see United States v. Smith*, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to Defendant from other sources (*see United States v. Bracy*, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that Defendant currently possesses (*see United States v. Mikaelian*, 168 F.3d 380, 389-90 (9th Cir. 1999), amended by 180 F.3d 1091); or (4) evidence the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over (*see United States v. Hanson*, 262 F.3d 1217, 1234-35 (11th Cir. 2001)).

Further, *Brady* does not require the United States to "create exculpatory evidence that does not exist" (*United States v. Sukumolahan*, 610 F.2d 685, 687 (9th Cir. 1980)), but only that it "supply a defendant with exculpatory information of which it is aware" (*United States v. Flores*, 540 F.2d 432, 438 (9th Cir 1976).

D. <u>Any Information that May Result in a Lower Sentence Under the Guidelines</u>

The United States objects to Defendant's request as overbroad. The United States produced discovery pertaining to the facts and circumstances of the offense and Defendant's criminal history. Defendant can determine the base offense level and criminal history category based on the information provided.

Should defendant claim that the United States must disclose information affecting defendant's sentencing guidelines because such information is discoverable under *Brady*, 373 U.S. 83, the United States respectfully disagrees. The United States is not obligated under *Brady* to furnish a defendant with information which he already knows. *See United States v. Taylor*, 802 F.2d 1108, 1118 n.5 (9th Cir.1986). *Brady* is a rule of disclosure, and therefore, there can be no violation of *Brady* if the evidence is already known to defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. *See United States v. Gaggi*, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on a defendant's mitigation of punishment until after defendant's

conviction or plea of guilty and prior to his sentencing date. *See United States v. Juvenile Male*, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value.").

E. Defendant's Prior Record

The United States has disclosed the information it has regarding defendant's criminal history, as contained in criminal rap sheet summaries or criminal history printouts, as well as documents from the A-file. Should the United States receive additional information regarding defendant's criminal history, it will disclose such records as well. See Fed. R. Crim. P. 16(a)(1)(D).

F. Any Proposed 404(b) Evidence

The United States will comply with its obligations under Fed. R. Evid. 404(b) and 609. Pursuant to those rules, the United States will provide defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. *See* Fed. R. Evid. 404(b), Advisory Committee's Note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supersede other rules of admissibility or disclosure[.]").

G. Evidence Seized

The United States will comply with Fed. R. Crim. P 16(a)(1)(E) in allowing defendant an opportunity, upon request and reasonable notice, to examine, photograph, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to defendant. The United States need not, however, produce rebuttal evidence in advance of trial. *See United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1984). The United States is not aware of any search warrant applications that have been filed in this case.

### H. Henthorn Material

The United States will continue to comply with *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. *See United States v. Booth*, 309 F.3d 566, 574 (9th Cir. 2002). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted ex parte to the Court for an in camera inspection and review. To the extent that defendant requests that the specific prosecutor in this case review the personnel files, that request is unwarranted and unnecessary. *Henthorn* expressly provides that it is the "government," not the prosecutor, which must review the personnel files. *Henthorn*, 931 F.2d at 30–31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. The United States objects to this request beyond this.

### I. Tangible Objects

The United States will comply with Fed. R. Crim. P 16(a)(1)(E) in allowing defendant an opportunity, upon request and reasonable notice, to examine, photograph, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to defendant. The United States need not, however, produce rebuttal evidence in advance of trial. *See United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1984). The United States will produce any audio recordings from Defendant's prior immigration judge proceedings.

J.  Expert Witnesses

Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial memorandum, the Government will provide the defense with notice of any expert witnesses the testimony of whom the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence in its case-in-chief. Such notice will describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications. The Government requests that the defense provide reciprocal notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

K. and L.  Impeachment Evidence/Evidence of Criminal Investigation of Any Government Witness

The United States objects to any overbroad requests for evidence of criminal investigations by federal, state, or local authorities into prospective government witnesses. The United States objects to the request for evidence that any prospective government witness has engaged in any criminal act as vague and overbroad. The United States is unaware of any rule of discovery or Ninth Circuit precedent that entitles defendants to any and all evidence that a prospective Government witness is under investigation by federal, state or local authorities. Moreover, as discussed above, the United States has no obligation to disclose information not within the possession, custody or control of the prosecution team in this matter. *See United States v. Gatto*, 763 F.2d 1040, 1048 (9th Cir. 1985); *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1375 (9th Cir. 1987) (holding the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); *cf. Beaver v. United States*, 351 F.2d 507 (9th Cir.1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment

information. The United States also recognizes its obligation to provide information—if any exists—related to the bias, prejudice or other motivation of its trial witnesses, as mandated in *Napue v. Illinois*, 360 U.S. 264 (1959), when it files its trial memorandum.

M. Evidence of Bias or Motive to Lie

The United States will comply with its obligations to disclose impeachment evidence under *Giglio*. The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of its trial witnesses as mandated in *Napue v. Illinois*, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. *See United States v. Bernard*, 623 F.2d 551, 556 (9th Cir. 1979). The United States objects to this request as to prospective government witnesses.

N. Evidence Affecting Perception, Recollection, Ability to Communicate

The Government will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify. The United States objects to this request as to prospective government witnesses. The United States objects to the remainder of this request as overbroad.

O. Witness Addresses

The United States has already provided defendant with the reports that contain the names of agents or officers involved in the apprehension of defendant. Although not required in non-capital cases, in its trial memorandum, the United States will provide defendant with a list of all witnesses whom it intends to call in its case-in-chief. The United States will agree to disclose a list of its witnesses in its trial memorandum. Beyond this, the United States objects to the disclosure of witnesses' addresses. *United States v. Paseur*, 501 F.2d 966, 972 (9th Cir. 1974) ("A defendant is not entitled as a matter of right to the name and address of any witness."); *see also United States v. Armstrong*, 621 F.2d 951, 1954 (9th Cir. 1980); *United States v. Jones*, 612 F.2d 453 (9th Cir. 1979) (holding no right to pretrial disclosure of the identity of Government witnesses). The Government is not

required to disclose all evidence it has or to make an accounting to defendant of the investigative work it has performed. *See Moore v. Illinois*, 408 U.S. 786, 795 (1972); *United States v. Gardner*, 611 F.2d 770, 774–775 (9th Cir. 1980).

P. Name of Witnesses Favorable to the Defendant

The United States has disclosed or will disclose the names of witnesses, if any, who have made favorable statements concerning defendant which meet the requirements of *Brady*.

Q. Statements Relevant to the Defense

The United States will comply with all of its discovery obligations. The Ninth Circuit's decision in *United States v. Bailleaux*, 685 F.2d 1105 (9th Cir. 1982), applies to a "statement made by the defendant that may be relevant to any possible defense or contention that the defendant might assert." *Id*. at 1114 (emphasis added).

R. Jencks Act Material

The United States will fully comply with its discovery obligations under the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. *See* 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the Government agent correctly understood what the witness said. *See United States v. Boshell*, 952 F.2d 1101, 1105 (9th Cir. 1991). In addition, rough notes by a Government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." *United States v. Cedano-Arellano*, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the statements testifies on direct examination. *See United States v. Robertson*, 15 F.3d 862, 873 (9th Cir. 1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under *Brady*) need not be revealed until such time as the witness testifies on

direct examination if such material is contained in a witness's Jencks Act statements. *See United States v. Bernard*, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, although the United States anticipates providing most, if not all, Jencks material well in advance of trial, it reserves the right to withhold Jencks statements of any particular witness it deems necessary until after the witness testifies.

S. Giglio Information

The United States has complied, and will continue to comply, with its obligations under *Giglio v. United States*, 405 U.S. 150 (1972).

T, U, and V. Informants and Cooperating Witnesses

Disclosure of an informant's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. *See Roviaro v. United States*, 353 U.S. 52, 60-61 (1957). There is no automatic right to pretrial discovery of information regarding informants and prospective government witnesses. *See United States v. Jones*, 612 F.2d 453 (9th Cir. 1979). The United States will disclose any responsive information as to informants and/or cooperating witnesses at the time of the filing of its trial memorandum, including *Giglio* information.

W. Personnel Records of Government Officers Involved in the Arrest

The United States will continue to comply with *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. *See United States v. Booth*, 309 F.3d 566, 574 (9th Cir. 2002). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted ex parte to the Court for an in camera inspection and review. To the extent that defendant requests that the specific prosecutor in this case review the personnel files, that request is unwarranted and unnecessary. *Henthorn* expressly provides that it is the "government," not the prosecutor, which must review the personnel files. *Henthorn*, 931

F.2d at 30–31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. The United States objects to this request beyond this. If the undersigned Assistant United States Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in-camera inspection and review.

X. <u>Residual Requests</u>

To the extent that any request is not addressed specifically, the United States explicitly opposes that request as outside the bounds of the discovery under the statutory and constitutional discovery obligations.

**B.** **<u>RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO FILE FURTHER MOTIONS</u>**

The United States does not object to the granting of leave to file further motions as long as the order applies equally to both parties.

**C.** **<u>THE UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY</u>**

The discovery provided in this case includes documents and objects which are discoverable under Rule 16(a)(l)(E). Defendant has requested the production of this evidence. Consequently, the United States is entitled to discover from Defendant any books, documents, data, photographs, tangible objects, buildings, or places, or copies or portions of any of these items, that are in Defendant's possession, custody, or control and which Defendant intends to use in Defendant's case in chief. *See* Fed. R. Crim. P. 16(b)(1)(A).

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which Defendant intends to introduce as evidence in chief at the trial, or which were prepared by a person whom Defendant intends to call as a witness. Because the United States will comply with Defendant's requests for delivery

12

of reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure. The United States also requests a written summary of the names, anticipated testimony, and bases for opinions of experts Defendant intends to call at trial under Rules 702, 703, and 705 of the Federal Rules of Evidence.

## IV.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that, except where unopposed, Defendant's Motions be denied, and that the United States' Motion for Reciprocal Discovery be granted.

DATED: December 5, 2025                    Respectfully submitted,
ADAM GORDON
United States Attorney

/s/ *Eric Chiang*
ERIC CHIANG
Assistant United States Attorney